TERRELL McQUINN V. THE STATE.

No. 19449.  Delivered April 20, 1938.

The opinion states the case.

*H. C. Woodruff* and *H. E. Lobdell,* both of Decatur, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for conspiracy to swindle, punishment being two years in the penitentiary.

We have been much disturbed over the question of the sufficiency of the indictment to charge a conspiracy to swindle. Article 1622, P. C. (1925)—formerly Article 1433—now reads: "A conspiracy is an agreement entered into between two or more persons to commit a felony. Obtaining money or property over the value of $50 by swindling is a felony, and therefore, included in the Conspiracy Statute. Article 1545, P. C. (1925), defines "swindling" as follows: " 'Swindling' is the acquisition of any personal or movable property, money or instrument of writing conveying or securing a valuable right, by means of some false or deceitful pretense or device, or fraudulent representation, with intent to appropriate the same to the use of the party so acquiring, or of destroying or impairing the right of the party justly entitled to the same." The definition employs such broad and comprehensive language that to charge the offense of swindling is difficult, and the same complications necessarily arise in attempting to charge a conspiracy to commit the offense.

It was alleged in substance that appellant and D. C. Conova entered into a positive agreement and conspiracy to fraudulently induce The Home Insurance Company to pay to Conova, or for his benefit, the fire insurance carried by said company in his favor on a certain described automobile, the said agreement being that appellant should secretly burn the automobile as a

basis for which Conova should make claim for said insurance, and "fraudulently receive the said insurance money, or the benefit thereof, without revealing that its burning was fraudulent." It is quite certain that the mere burning of the automobile could not effect a swindling of the insurance company; something more must have been done to constitute a swindle if collection was effected, and therefore, something more must have been contemplated and agreed on to constitute a conspiracy to swindle. The only thing averred as to that matter was that Conova should receive the insurance money "without revealing" that the car had been fraudulently burned. Does this negative averment as to the agreement or conspiracy meet the requirement of the law in order to show that the offense of swindling was in contemplation? If the insurance money was collected under such circumstances a civil liability might arise, but to hold one guilty of the criminal offense of swindling there must have been some "false representation." Therefore, it occurs to us that to properly charge a conspiracy to swindle under the circumstances it was necessary to aver in substance that in making claim for the insurance money it was agreed that it should be falsely represented to the insurance company that the car had burned under such conditions as would make the terms of the policy enforceable in Conova's behalf. Especially does such allegation seem necessary in the absence of averments in the indictment showing that, under the terms of the policy or the rules of the company, the mere filing of a claim without further representation that the property had not been illegally burned by the owner or at his instigation would furnish sufficient basis for the collection of the insurance. See Carter v. State, 91 Texas Crim. Rep. 96, 237 S. W. 285, and authorities there cited; Cowan v. State, 41 Texas Crim. Rep. 617, 56 S. W. 751.

To have effected the collection of the insurance money in the manner which seems to have been in contemplation of the parties a conspiracy to burn Conova's automobile was involved as one of the steps towards accomplishment of the conspiracy. Article 1322, P. C., reads: "Whoever with intent to defraud wilfully burns any personal property owned by himself which shall be at the time insured against loss or damage from fire shall be confined in the penitentiary not less than two nor more than five years."

Conova owned the car. If it was insured against loss or damage from fire and he had burned it himself wilfully and with intent to defraud he would have fallen under condemnation of said Article 1322. If appellant and Conova conspired to burn

it wilfully and with intent to defraud it appears that such conspiracy would have been tangible and a basis of prosecution if the evidence be sufficient. It is not intended to convey the idea that a prosecution for conspiracy to swindle the insurance company would not lie, although the accomplishment of it also included a conspiracy to burn the automobile. See Graff v. People, (Supt. Ct. Ill.) 70 N. E. 299.

We desire to call attention to the fact that under the evidence a reversal of the judgment would be necessary under any circumstances.

Paul Elliott was an accomplice witness and properly so regarded by the court in his charge. The substance of Elliott's testimony was as follows: A few days before the car was burned the witness, appellant, and several other parties were going on a fishing trip and stopped at Conova's house to make some inquiry about whisky; while there something was said to the effect that Conova was about to lose his car because he did not have the money to pay for it. Appellant asked Conova if the car burned would he get sufficient money to finish paying for it; Conova said he thought he would draw enough money to finish paying for it if he could get a job like that done; appellant then suggested to Conova that he bring the car over and let him (appellant) burn it. Witness further testified that a few nights later he saw Conova drive the car up and leave it at appellant's house; witness went at appellant's request with him and they got some gasoline; witness drove appellant's car and appellant drove Conova's car to the point where it was later found burned; witness saw appellant pour the gasoline on the car and set it afire; appellant had promised to pay witness five dollars for aiding him in the transaction. Witness Elliott was under indictment for his connection with the burning of the car.

Elliott detailed the route claimed to have been traveled by him and appellant in reaching the place where the car was burned. Many of his statements as to things that occurred at different places were corroborated by officers, but all of such statements which were corroborated were immaterial, noncriminative matters and did not meet the requirements of the law in regard to corroboration of accomplice testimony. We have examined the statement of facts critically and the only statement we find which seems in any way to bear upon the transaction is that of the witness Cunningham, who testified that on the night the car was burned appellant came into his filling station and bought two gallons of gasoline; that some one was with appellant at the time but witness did not know who it was; that there was nothing unusual in the fact that appellant bought

the gasoline; that appellant had a five-gallon can with him and witness put two gallons of gasoline in it at appellant's request; that this was about eight o'clock at night before the car was discovered burned the next morning. It will be observed that this testimony in no way tends to corroborate Elliott's statement in regard to a conspiracy having been entered into between appellant and Conova and that was the substantive crime for which appellant was on trial. If the testimony of the accomplice witness be excluded there is scarcely a hint in the other testimony tending to connect appellant even with the burning of the car, and certainly it does not tend to corroborate Elliott's testimony as to the alleged conspiracy.

We note with some interest that Conova's wife testified that at the time the car was destroyed by fire they were not behind with the payments on it, but were in fact two months ahead. This testimony may or may not have been true, but it would have been easy for the State to have disproved it had her testimony been false.

It further appears from the testimony that Conova never made any claim to the insurance company for his insurance on the car, but only reported that the car had burned. The insurance money was paid to the Commercial Credit Company, to whom the policy had been assigned by Conova.

Under the circumstances the proper order seems to be to reverse for the errors mentioned and direct that the prosecution be dismissed under the present indictment.